**AURORA EDUCATION ASSOCIATION EAST et al., Plaintiffs-Appellants,**

**v.**

**BOARD OF EDUCATION OF AURORA PUBLIC SCHOOL DISTRICT NO. 131 OF KANE COUNTY, ILLINOIS, et al., Defendants-Appellees.**

No. 73–1085.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 17, 1973.

Decided Dec. 20, 1973.

As Amended Jan. 4, 1974.

432

Stephen J. Pollak, Washington, D. C., R. W. Deffenbaugh, Springfield, Ill., for plaintiffs-appellants.

Lambert M. Ochsenschlager, Aurora, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and WYZANSKI*, Senior District Judge.

WYZANSKI, Senior District Judge.

Seven public school teachers in Aurora, Kane County, Illinois and the Au-

---

* Senior District Judge Charles Edward Wysanski, Jr., of the District of Massachusetts, is sitting by designation.

rora Education Association East, of which they are members, are plaintiffs. The Board of Education of Aurora Public School District No. 131 of Kane County, the members of that Board, and the Superintendent of Aurora's school system are defendants.

June 9, 1971, during collective bargaining and wage disputes between the teachers represented by the Association and the Board, the Association at one of its meetings adopted this resolution:

"Be it resolved that the teachers of District # 131 will not return to the classroom in the fall if there is at [that] time no satisfactory settlement of the contract between the Board of Education and the AEAE and further that an open meeting be held on September 2 for all teachers to assess the position of the AEAE at that time."

Thereupon the Board, dropping its negotiations for a collective bargain with the Association, wrote to each teacher a letter offering him or her an individual contract for the 1971–1972 school year. Each proposed contract provided that the contracting teacher expressly agreed that

"(1) By urging, advocating, recommending, and asserting the right to strike by its members prior to the vote, and at the meeting held on June 9, 1971, the AEAE no longer qualifies as the organization that, under the established School Board Policy (1.30 Article II) [is] a bargaining representative of the teachers of the school system, and accordingly will not be recognized by the School Board as such agent for the teachers.

"Nothing in this paragraph is intended to prevent the Teacher from belonging to the AEAE, but relates only to AEAE's lack of qualification to act as the bargaining agent for the Teacher in negotiations with the School Board."

In the foregoing, the citation of School Board Policy 1.30 Article II is a reference to a provision permitting a labor organization to negotiate, on behalf of teachers, with the Board, but excluding from all bargaining rights *"any organization (1) which asserts the right to strike against any . . . agency of the government, or to assist or to participate in any such strike, or which imposes a duty or obligation to conduct, assist or participate in any such strike. . . ."* This emphasized exclusory language is the focal point on which this case at bar turns.

Many teachers executed the proposed contract, and thus became entitled to advantages not offered in the 1970–1971 contracts. To the seven individual plaintiffs, none of whom executed the proffered contracts, the Board offered continued employment for the new year on the old terms. *Faute de mieux,* the seven continued at work under the disadvantageous 1970–1971 terms, and then brought this suit in the District Court.

Relying on the United States Constitution's Fourteenth Amendment's due process clause and its alleged incorporation of the principles of the First Amendment, and also invoking Section 1 of the Civil Rights Act of 1871, 42 U.S. C. § 1983, plaintiffs sought (1) a declaration that, as here applied, School Board Policy 1.30 was invalid, and that plaintiff teachers were entitled to be placed on the same salary schedule and like terms as those teachers who had executed the proposed 1971–1972 contract, (2) an injunction protecting for the future the rights so declared, (3) back pay based on the 1971–1972 schedule, (4) $25,000 actual damages, (5) $25,000 exemplary damages, and (6) an attorney's fees and costs.

Defendants moved to dismiss the complaint on the grounds that (1) the complaint failed to state a valid claim, (2) plaintiffs' purported claims under 42 U. S.C. § 1983 did not lie against the Board or its members, and (3) the Association was not a proper plaintiff to assert the alleged claim under 42 U.S.C. § 1983.

On the ground that it failed to state a valid claim, the District Court dismissed the complaint. Relying upon Hanover Township Federation of Teachers v.

Hanover Community School Corp., 457 F.2d 456 (7th Cir. 1972), the Court's opinion held that the Board's proposed contracts for 1971–1972 and the Board's refusal to continue collective bargaining with the Association had not violated 42 U.S.C. § 1983 or plaintiffs' claimed rights under the due process clause of the Fourteenth Amendment.

Plaintiffs appeal from the District Court's dismissal of their complaint.

We address ourselves to the already quoted exclusory provision in School Board Policy 1.30.

■ National Ass'n of Letter Carriers v. Blount, 305 F.Supp. 546 (D.D. C.1969), appeal dismissed by stipulation, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970) and United Federation of Postal Clerks v. Blount, 325 F.Supp. 879 (D.D. C.), aff'd mem. as to issues not here involved, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971), invalidated virtually identical provisions in a federal statute and a federal administrative provision. The cited cases pointed out that the language is ambiguous, leaving it unclear whether it encompasses the mere philosophical or political assertion of the declarant's belief that he has a right to strike. A governmental inhibition against the declaration of such a purely theoretical position is a plain case of an unconstitutional official interference with freedom of speech and is unconstitutional. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L. Ed.2d 1356 (1957). Where a governmental body seeks by an over broad regulation to preclude both lawful and unlawful speech, the regulation because of its overbreadth is a violation of guarantees of free speech and is unconstitutional. Keyishan v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

■ We wholly agree with the analysis of the three-judge district courts in the opinions already mentioned. The Board's Policy 1.30 as here applied precludes a teacher from receiving a full salary and perquisites if, as a mere matter of dogma, he holds to the belief that teachers should be free to strike against governmental agencies. Such throttling of freedom of belief and of speech is contrary to that part of the First Amendment which is incorporated in the Fourteenth Amendment. We need no recital of literary authorities from John Milton to Harold J. Laski or of judicial luminaries from Justices Holmes, Brandeis, and Cardozo to Black, Frankfurter, and Harlan (to mention only the dead) to buttress the principle that the teacher, like any other citizen, is free to think as he likes, and to express those views academically provided action is not advocated but merely adumbrated. 42 U.S.C. § 1983 gives a person protection against interference by state officials with that fundamental civil liberty.

■ Since the Board's Policy 1.30 seeks, *inter alia,* to prohibit constitutionally permissible free speech, it is because of its overbreadth, violative of the due process clause of the Fourteenth Amendment. Keyishan v. Board of Regents, *supra.*

Defendants and the District Court misconceive Hanover Township Federation of Teachers v. Hanover Community School Corp., 457 F.2d 456 (7th Cir. 1972). Whatever else may be said about that case, it dealt with the question whether a public body is under a constitutional duty, apart from statute, to bargain collectively with the labor representative of its employees. There was no occasion to consider in that case, and the court did not consider, the problem of this case, that is, whether a public body may interfere with its employees' freedoms to think and to speak—which from the beginning of time have been recognized as wholly different from the freedom to associate and to seek to use the strength which comes from union in assembly and action. See Wyzanski, "The Open Window and the Open Door," 35 Cal.L.Rev. 336 (1947).

Defendants suggest miscellaneous grounds, not relied upon by the District

Court, which they argue could have supported its dismissal of the complaint.

We note that at least one of the points pressed by defendants is unsound. The Board is not a municipal corporation and in that capacity outside the coverage of 42 U.S.C. § 1983, as construed in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

There are other points, such as whether plaintiffs could recover the types of damage they claim, which do not go to the only issue before this court: that is, whether the complaint states a valid cause of action. We shall leave such points without comment until, if ever, they become the basis of a judgment entered by the District Court. It is not our function to issue the sort of declaratory judgment which would tell a District Judge how he should decide a hypothetical case which may or may not ultimately be supported by properly presented evidence and which may or may not be pressed to a conclusion by the litigants before that judge.

After the case was argued before us, and in accordance with discussions at our bar, the parties sought to settle this case. But no agreement was reached. Instead, unilaterally, defendants revised Subsection (1) of Article II of School Board Policy 1.30 to eliminate the language "asserts the right to strike against any local, state or federal agency of the government." This unilateral action is not the equivalent of a promise made to an adversary as part of a settlement. Nor is it a stipulation made in court binding the declarant forever to adhere to a new policy based on a public confession of earlier unconstitutional action. Nor does it offer financial recompense to those plaintiffs who may have suffered damage caused by defendant's unlawful acts. Under these circumstances, plaintiffs have not lost their standing to invoke at least equitable relief, Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), not to mention the continued vitality of their claim for monetary compensation, remedial and punitive.

The judgment of the District Court, dismissing the complaint, is reversed.